IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MICHELE LEE,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | **Civil No. TMD 15-3307** |
| v. | * | |
| | * | |
| | * | |
| **NANCY A. BERRYHILL,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.**[1] | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND**

Plaintiff Michele Lee seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 21).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**.

# I

## Background

Plaintiff was born in 1968, has a tenth-grade education, and previously worked as a short-order cook and cashier. R. at 449-52. Plaintiff filed an application for DIB on June 3, 2009, and for SSI protectively on June 4, 2009, alleging disability beginning on April 1, 2008, due to arthritis; tendonitis; and major, recurrent depression. R. at 14, 108-11, 135. The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 44-47, 58-72. On June 23, 2011, an ALJ dismissed Plaintiff's request for a hearing as untimely. R. at 48-52. The Appeals Council vacated the ALJ's dismissal and remanded after finding good cause for Plaintiff's untimeliness. R. at 53-57A.

On June 11, 2013, ALJ Stewart Goldstein held a hearing in Hagerstown, Maryland, at which Plaintiff and a vocational expert ("VE") testified. R. at 443-71. On December 26, 2013, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of April 1, 2008, through the date of the decision. R. at 11-28. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on August 28, 2015. R. at 7-10. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On October 29, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. After the parties consented, this case was transferred to a United

States Magistrate Judge for final disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

A.     **State Agency Medical Consultants**

On December 10, 2009, a state agency consultant, E. Edmunds, Ph.D., using the psychiatric review technique ("PRT") under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairments under Listings 12.04, 12.08, and 12.09 relating to affective disorders, personality disorders, and substance addiction disorders (R. at 255-68). *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.08, 12.09. Dr. Edmunds opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused her to experience (1) moderate restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two repeated episodes of decompensation of extended duration. R. at 265. Dr. Edmunds did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing. R. at 266. Dr. Edmunds thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 251-54) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) maintain

socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (7) respond appropriately to changes in the work setting; and to (8) set realistic goals or to make plans independently of others. Plaintiff otherwise was not significantly limited. R. at 251-52.

In assessing Plaintiff's mental RFC, Dr. Edmunds opined:

[Plaintiff] meets various personal needs and daily living functions from a mental standpoint. This individual manages within a basic routine, with some dependence on others basic needs. Motivation, persistence, A/C, and memory fluctuate due to the effects of mood and distractions from medical conditions and pain. [Plaintiff] is able to understand and follow one and two-step instructions, work independently, and make simple work-related decisions. [Plaintiff] is able to adequately negotiate in the community.

While [Plaintiff] retains the ability to request assistance from others, and to maintain adequate social relations with peers, [Plaintiff] would be expected to have difficulty at times responding to the public and maintaining socially appropriate behavior. [Plaintiff] would be expected to have some difficulty managing changes in environments and task requirements, and in setting useful personal goals.

[Plaintiff] would be expected to perform adequately with structured routine tasks, that require minimal independent decision making, based on history of poor judgment.

Overall, [Plaintiff's RFC] appears compatible with the performance of simple tasks on a prolonged basis.

R. at 253.

On December 22, 2010, another state agency consultant, M. Prout, again used the PRT to evaluate Plaintiff's mental impairments under Listing 12.04. R. at 291-304. The consultant opined that, under paragraph B of the applicable listing, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration. R. at 301. The consultant did not find evidence to establish the presence of the criteria under paragraph C

of the applicable listing. R. at 302. The consultant thus assessed Plaintiff's mental RFC (R. at 305-08) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; and to (2) interact appropriately with the general public. R. at 305-06. The consultant opined: "[Plaintiff] is capable of understanding and following simple instructions on a sustained basis. [Plaintiff] is capable of adequately interacting with supervisors and coworkers but would have moderate limitations interacting with the general public. Given the above, there are no limitations in adaptation." R. at 307.

B.   **Plaintiff's Testimony**

The ALJ summarized Plaintiff's testimony in his decision:

> In her written statements and testimony, [Plaintiff] reported experiencing pain in her arms, occasional numbness and tingling in her hands and arms, swelling in her wrists, feelings of depression and anxiety, panic attacks, hallucinations, suicidal ideation with attempts, sleep disturbance, impaired concentration and memory, disorientation, dislike of being around others, and communication limitations [R. at 134-43, 157-64]. She reported having difficulty lifting, squatting, bending, standing, remembering, completing tasks, and concentrating [R. at 157-64]. However, she testified at her hearing that she is not limited in how long she can sit, stand, and walk lately. [Plaintiff] reported taking medication for her impairments [R. at 134-43], but she also denied taking medication for her impairments in her written reports since her alleged onset of disability [R. at 179-83]. She reported experiencing medication side effects including sleepiness, blurred vision, dizziness, and appetite suppression [R. at 134-43]. However, she testified that her medications are of some assistance. Despite her impairments, [Plaintiff] reported in her written statements and testimony that she is able to perform light cooking, wash dishes, wash laundry for one and a half to two hours monthly, shop in stores for food, pay bills, count change, use a checkbook/money orders, watch television, go outside daily, and attend church weekly without problems [R. at 157-64].

R. at 20; *see* R. at 449-65.

C.   **VE Testimony**

The VE testified that a hypothetical individual with the same age, education, and work experience as Plaintiff and with the RFC outlined below in Part III could not perform Plaintiff's

5

past work but could perform the light and medium jobs of hand packer, garment sorter, and laundry worker.³  R. at 467-68.  Such an individual who also functioned at 90% of the efficiency of an unimpaired worker because of an inability to maintain focused attention would remain able to perform these jobs.  R. at 468.  An individual who functioned at only 80% of the efficiency of an unimpaired worker could not perform any work, however.  R. at 468-69.  According to the VE, his testimony, with the exception of his testimony regarding the percentages of time off task, was consistent with the *Dictionary of Occupational Titles*.⁴  R. at 469.  A person absent from work more than two days per month would not be able to maintain work.  R. at 469.

### III

### Summary of ALJ's Decision

On December 26, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of April 1, 2008; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could

---

³ "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* §§ 404.1567(c), 416.967(c).

⁴ "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

perform other work in the national economy, such as a hand packer, garment sorter, or laundry folder. R. at 17-27. The ALJ thus found that she was not disabled from April 1, 2008, through the date of the decision. R. at 27.

In so finding, the ALJ found that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. R. at 18.

> [Plaintiff] reported having difficulty remembering, completing tasks, and concentrating [R. at 157-64]. However, treatment records reflect that [Plaintiff] exhibited good/fair/intact attention, good memory, a logical thought process, and good abstract thought [R. at 223-27, 366-76, 416-29]. Additionally, [Plaintiff's] ability to perform light cooking, wash dishes, wash laundry, shop in stores, pay bills, count change, use a checkbook/money orders, watch television, attend church weekly without problems, and plan a friend's party indicates that her limitations in this area are no more than moderate [R. at 157-64, 416-29].

R. at 18.

> The ALJ then found that Plaintiff had the RFC
>
> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she is limited to performing simple, routine tasks with no more than occasional and superficial interaction with the public. She is limited to work where changes in tasks, with the addition of new tasks, does not occur more frequently than once a month on the average, and where she can be given a few extra minutes of supervision at the times of change to explain the change and help her adjust to the change. She is limited to a job where she is not required to engage in independent decisionmaking. She can function at only 90 percent of the efficiency of an unimpaired worker due to her symptoms, including her impaired ability to maintain focused attention.

R. at 19.

> The ALJ considered the opinions of the state agency psychological consultants, who
>
> determined that [Plaintiff] has moderate limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation [R. at 251-54, 305-08]. The opinion of the State agency psychological consultants is accorded partial weight to the extent that this opinion is consistent with the limitations reflected in the [RFC], which are well supported by the medical evidence of record . . . . However, as the aforementioned evidence warrants the inclusion of differing limitations, this opinion is not accorded greater weight.

R. at 26.

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[6] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-9,

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

ECF No. 14-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 5-9. In particular, she contends that, although the ALJ determined that she had moderate difficulties with regard to concentration, persistence, or pace, the ALJ failed to include any limitation on concentration, persistence, or pace in the RFC assessment. *Id.* at 6. Plaintiff also asserts that the ALJ failed to explain the basis for his finding that she could function at only 90% of the efficiency of unimpaired worker because of her symptoms. *Id.* at 7-8. Plaintiff further maintains that the ALJ failed to evaluate Dr. Edmunds's opinion that Plaintiff was able to understand and follow one- and two-step instructions. *Id.* at 8-9 (citing R. at 253). Plaintiff finally contends that the ALJ failed to include any restriction or limitations related to her asthma, a severe impairment. *Id.* at 9. According to Plaintiff, substantial evidence thus does not support the ALJ's RFC assessment. *Id.* Because inadequacy of the ALJ's analysis frustrates meaningful review, the Court remands this case for further proceedings.

> SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC
>
> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are

'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

  The Fourth Circuit further held in *Mascio* that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.* In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary."

13

*Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

Here, the ALJ's hypothetical question to the VE and the corresponding RFC assessment limiting Plaintiff "to performing simple, routine tasks with no more than occasional and superficial interaction with the public" (R. at 19; *see* R. at 467) do not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See Mascio*, 780 F.3d at 638; *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (per curiam) (rejecting contention that "the ALJ accounted for [the claimant's] limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"). *But see Hillard v. Colvin*, Civil Action No. ADC-15-1442, 2016 WL 3042954, at *6 (D. Md. May 26, 2016) ("The ALJ additionally accounted for Plaintiff's limitation in concentration and persistence by restricting him to work 'without frequent interaction with co-workers or the public.'"); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact."). The limitation in the ALJ's hypothetical question and RFC assessment to work involving task changes no more than once a month on average, with "a few extra minutes of supervision at the times of change to explain the change and help her adjust to the change" (R. at 19; *see* R. at 467) accounts for Plaintiff's moderate limitation in concentration, persistence, or pace, however. *See Pearce v. Colvin*, No. 2:15-CV-00032-D, 2016 WL 4574446, at *4 (E.D.N.C. July 20, 2016), *report and recommendation adopted*, No. 2:15-CV-32-D, 2016 WL 4581329 (E.D.N.C. Sept. 1, 2016). *But see Thomas v. Colvin*, No. 7:15-CV-101-KS, 2016

WL 5408114, at *3 (E.D.N.C. Sept. 28, 2016); *Hagedorn v. Colvin*, No. 2:12CV85-RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015). Plaintiff's contention that the ALJ failed to account for her moderate limitation in maintaining concentration, persistence, or pace in the RFC assessment and hypothetical question to the VE under *Mascio* thus is unavailing.

The ALJ's decision, however, fails to explain how, despite Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace, she could function at "90 percent of the efficiency of an unimpaired worker due to her symptoms, including her impaired ability to maintain focused attention." R. at 19. The ALJ noted that treating sources found Plaintiff to demonstrate good/fair/intact attention, a logical thought process, appropriate thought content, good memory, no psychomotor agitation or retardation, good abstract thought, a cooperative attitude, articulate speech, normal behavior, no psychosis, and no hallucinations or delusions upon examination. R. at 22, 25. The ALJ also cited the opinions of the state agency psychological consultants, who opined that Plaintiff had "moderate limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation." R. at 26 (citing R. at 251-54, 305-08). Dr. Edmunds also opined, however, that Plaintiff "would be expected to perform adequately with structured routine tasks[] that require minimal independent decision making, based on history of poor judgment" and could perform "simple tasks on a prolonged basis." R. at 253. "In short, the ALJ failed to explain how this evidence translated into a determination that [Plaintiff] would be off task 10% of the time," *Petry v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017), and "failed to explain why he equated the facts to a [10%] reduction as opposed to the [20%] reduction he contemplated (or, for that matter, any other number)." *Lobbes v. Colvin*, No. 4:13-CV-57-RLY-WGH, 2014 WL 1607617, at *20 (S.D. Ind. Apr. 22, 2014). "The ALJ's failure to connect his

factual findings to his chosen number is particularly disconcerting because . . . the figure he discarded would have meant disability according to the VE's testimony" (R. at 468-69). *Id.* While "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)), "the ALJ 'must build an accurate and logical bridge from the evidence to his conclusion,'" which the ALJ did not do so here. *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). An ALJ's failure to do so constitutes reversible error. *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Because the inadequacy of the ALJ's analysis frustrates meaningful review, remand under the fourth sentence of 42 U.S.C. § 405(g) is appropriate, and the Court need not address Plaintiff's remaining arguments. *See Mascio*, 780 F.3d at 636.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 21) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**. Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: July 14, 2017                                                /s/
                                                                          Thomas M. DiGirolamo
                                                                          United States Magistrate Judge